**Phillip ANDRE, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 01–7008.**

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 29, 2002.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Martin F. Hockey, Jr., Senior Trial Counsel, Commercial Litigation Branch,

Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and David M. Cohen, Director. Of counsel was Mark A. Melnick, Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and Y. Ken Lee, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

Michael P. Horan, Paralyzed Veterans of America, of Washington, DC, for amicus curiae Paralyzed Veterans of America.

Before SCHALL, GAJARSA, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

Phillip Andre appeals from the order of the United States Court of Appeals for Veterans Claims ("Veterans Court") that dismissed part of his appeal for lack of jurisdiction and affirmed the rest. *Andre v. West,* 14 Vet.App. 7 (2000). The Veterans Court concluded that it lacked jurisdiction over Mr. Andre's appeal insofar as it related to claims of clear and unmistakable error that Mr. Andre had raised for the first time on appeal. The Veterans Court also concluded that Mr. Andre had abandoned the claims of clear and unmistakable error that he had asserted before a Regional Office ("RO") of the Department of Veterans Affairs ("VA") and the Board of Veterans' Appeals ("BVA" or "Board") and

that the BVA had adjudicated. The court therefore affirmed the decision of the Board as to those claims. We affirm.

BACKGROUND

I.

Mr. Andre served on active duty in the United States Navy from October of 1965 to January of 1966. In March of 1973, he filed a claim for service connection and benefits relating to a mental disorder. *Id.* at 8. The St. Louis, Missouri RO denied the claim on June 29, 1973. The RO determined that Mr. Andre suffered from a personality disorder that predated his service, that the disorder had not been aggravated by his service, and that, after Mr. Andre left the service, the disorder had matured into the psychosis for which he sought benefits. *Id.* Mr. Andre did not appeal the RO's denial of his claim. In August of 1992, however, the BVA reopened Mr. Andre's claim and found his mental disorder (schizophrenia) to be service connected. In September of 1992, the RO implemented the Board's decision by granting Mr. Andre a 100% disability rating, effective June 12, 1990. *Id.*

In March of 1995, Mr. Andre filed a claim with the RO asserting clear and unmistakable error ("CUE") in the 1973 decision that had denied him service connection and benefits.[1] Mr. Andre ad-

---

1. In 1995, claims of CUE at the RO level were governed solely by a VA regulation. The regulation provided that "[p]revious determinations which are final and binding ... will be accepted as correct in the absence of clear and unmistakable error." 38 C.F.R. § 3.105(a) (1995). That regulation remains in place today. *See* 38 C.F.R. § 3.105(a) (2001). In 1997, Congress enacted Pub.L. No. 105–111, 111 Stat. 2271 (1997), which is codified at 38 U.S.C. §§ 5109A and 7111. Section 5109A covers claims of clear and unmistakable error at the RO level, while

section 7111 covers claims of clear and unmistakable error at the Board level. Section 5109A(a) provides that "[a] decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error." We have stated that Pub.L. No. 105–111 "codified the prior regulation." *Donovan v. West,* 158 F.3d 1377, 1382 (Fed. Cir.1998).

Under the regulation, "[f]or the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal

vanced two grounds in support of his claim: first, that the denial of service connection in 1973 was factually erroneous; and second, that the VA had failed to discharge its duty to assist him in preparing his 1973 claim, as currently required by 38 U.S.C. § 5103A. After the RO denied his CUE claim, Mr. Andre appealed to the BVA. In a May 7, 1998 decision, the Board held that the 1973 RO decision did not contain clear and unmistakable error. First, the Board determined that the RO had based its denial of service connection on a consideration of all the facts then in the record. Second, relying on *Caffrey v. Brown*, 6 Vet.App. 377 (1994), the Board ruled that a breach by the VA of its duty to assist Mr. Andre in the preparation of his claim could not constitute a ground for the assertion of a claim of clear and unmistakable error.

Mr. Andre appealed the BVA's decision to the Veterans Court. Before the Veterans Court, Mr. Andre presented, for the first time, additional allegations of clear and unmistakable error in the RO's 1973 denial of service connection. Specifically, Mr. Andre argued that the RO had committed CUE because it had failed to apply 38 C.F.R. § 3.303(b), which governs determinations of service connection relating to chronic diseases, and 38 C.F.R. § 3.304(b), which provides for the presumption that a claimant was sound before entering the service. *Andre*, 14 Vet.App. at 9. Mr. Andre also argued that because his CUE claims raised legal arguments in a collateral attack on the propriety of a VA decision, the Veterans Court should review the 1973 denial of service connection *de novo*. In his principal brief before the Veterans Court, Mr. Andre did not mention the two CUE claims that he originally had presented to the RO and appealed to the Board: the claim that the RO's 1973 decision lacked factual support; and the claim that the VA had breached its duty to assist him in the preparation of his claim. *Id.*

In a July 20, 2000 order, the Veterans Court held that it lacked jurisdiction under 38 U.S.C. § 7252(a) to consider the newly-raised CUE claims. The court relied on its decision in *Sondel v. Brown*, 6 Vet.App. 218, 219 (1994), in which it articulated the "unassailable premise that [the court does] not have jurisdiction to review a claim of CUE unless it has been previously adjudicated by the Board." Because Mr. Andre had not raised before the Board, and the Board accordingly had not considered, the CUE claims that Mr. Andre presented for the first time on appeal, the Veterans Court concluded that the jurisdictional prerequisite of a final Board decision addressing those claims was lacking. Therefore, as to those claims, the court dismissed the appeal for lack of jurisdiction. *Andre*, 14 Vet.App. at 10–11. At the same time, the court held that Mr. Andre had abandoned the two CUE claims that had been considered by the Board but were not raised in his principal brief. Finally, the Veterans Court rejected as "meritless" Mr. Andre's argument that his assertion of a CUE claim should cause the RO's allegedly erroneous denial of service connection to be subjected to *de novo* review. *Andre*, 14 Vet.App. at 11. Accordingly, the court affirmed the decision of the Board as to the claims it had decided.

## DISCUSSION

### I.

Pursuant to 38 U.S.C. § 7292(a), we have jurisdiction to review a decision of

---

of a prior decision on the grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision." 38 C.F.R. § 3.105(a). The statute is virtually identical.

*See* 38 U.S.C. § 5109A(b) (2000). A veteran who successfully advances a CUE claim thus is entitled to benefits retroactively to the date of the original claim. *See, e.g., Smith v. Gober*, 236 F.3d 1370, 1371 (Fed.Cir.2001).

the Veterans Court "with respect to the validity of any statute or regulation ... or any interpretation thereof ... that was relied on by the court in making its decision." Under that rubric, we have jurisdiction over Mr. Andre's appeal because the appeal concerns the Veterans Court's interpretation of its jurisdictional statute, 38 U.S.C. § 7252(a) (2000). We review legal issues, including whether the Veterans Court properly declined to assert jurisdiction pursuant to its authority under section 7252(a), without deference. *Maggitt v. West*, 202 F.3d 1370, 1374 (Fed.Cir. 2000). The Veterans Court's jurisdictional statute is to be construed "narrowly and 'with precision and with fidelity to the terms by which Congress has expressed its wishes,'" *Bailey v. West*, 160 F.3d 1360, 1363 (Fed.Cir.1998) (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968)).

## II.

On appeal, Mr. Andre makes three arguments. First, he contends that the Veterans Court erred by refusing to assert jurisdiction over his newly-raised CUE claims. Second, he argues that he did not abandon the CUE claims that he presented to the BVA and that the BVA decided by failing to raise them in his principal brief before the Veterans Court. Finally, he renews his contention that the Veterans Court should review *de novo* a prior VA decision collaterally attacked pursuant to a CUE claim. For the reasons that follow, we hold (i) that the Veterans Court did not err in holding that it lacked jurisdiction to consider the CUE claims Mr. Andre raised for the first time on appeal and (ii) that we are without jurisdiction to consider the abandonment issue. Our affirmance of the Veterans Court's jurisdictional ruling ren-

ders moot Mr. Andre's argument that the Veterans Court should review *de novo* an RO decision that is collaterally attacked in a CUE claim.

A. *Whether the Veterans Court had jurisdiction to consider the CUE claims that Mr. Andre raised for the first time on appeal.*

■ The jurisdiction of the Veterans Court is defined by 38 U.S.C. § 7252(a). The statute provides that the court "shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." [2] Review by the Veterans Court "shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b). Mr. Andre argues that the decision of the BVA rejecting the two CUE claims he had asserted before the RO constituted a "decision" under section 7252(a) for purposes of vesting the Veterans Court with jurisdiction to consider his newly-raised CUE claims. In support of his argument, Mr. Andre points to the statement in *Maggitt v. West* that "the Veterans Court has jurisdiction to hear arguments presented to it in the first instance, provided it otherwise has jurisdiction over the veteran's claim." 202 F.3d at 1377.

In *Maggitt*, the veteran filed claims in 1979 and 1983 for service connection for asthma, a knee condition, and a skin disorder. ROs denied the claims, and the veteran did not appeal the denials. *Id.* at 1373. In 1989, Maggitt sought to reopen his claims for these conditions. He also requested service connection for a back condition. After the RO denied the four claims, Maggitt filed a timely Notice of Disagreement ("NOD") with the BVA pursuant to 38 U.S.C. § 7105(a). The Board denied Maggitt's request to reopen the

2. Review of a BVA decision is obtained by filing a notice of appeal with the Veterans Court within the required time period. *See* 38 U.S.C. § 7266(a) (2000).

asthma, knee condition, and skin disorder claims. The Board also denied service connection for the back claim. *Id.* Maggitt appealed the Board's decision to the Veterans Court, and before the court he made two arguments in support of his claims that he had not presented to the Board. The Veterans Court ruled that, because Maggitt had failed to present what it termed two new "issues" to either the RO or the Board, the court did not have jurisdiction to consider the issues. *Id.* at 1374. Maggitt appealed to this court, arguing, *inter alia*, that the Veterans Court had erred in holding that it lacked jurisdiction to consider his new arguments.

We reversed the ruling of the Veterans Court on the jurisdictional issue. In our decision, we interpreted the Veterans Court's jurisdictional grant under 38 U.S.C. § 7252(a) as allowing the court to consider arguments on appeal from the Board as long as two requirements are met. First, the Veterans Court may review a Board decision only if the appeal was initiated by an NOD filed on or after November 18, 1988. *Id.* at 1375; *see* Veterans' Judicial Review Act of 1988, Pub.L. No. 100–687, § 402, 102 Stat. 4105 (1988). Second, in order to invoke the Veterans Court's jurisdiction, the veteran's appeal must challenge a "decision" of the Board "with respect to the benefit sought by the veteran." *Maggitt*, 202 F.3d at 1376. We concluded that this interpretation of a "decision," which refers to the denial or acceptance of a veteran's claim for benefits instead of a particular argument in support of that claim, allows the Veterans Court to consider arguments in support of a claim irrespective of whether the veteran raised the arguments before the Board. Accordingly, we concluded that the "Veterans Court has jurisdiction to hear arguments presented to it in the first instance provided it otherwise has jurisdiction over the veteran's claim." *Id.* at 1377.

The government argues that, unlike the veteran in *Maggitt*, who simply raised new arguments in support of a claim for benefits that already had been adjudicated by the Board, Mr. Andre raised before the Veterans Court claims that had not been the subject of a Board decision. Thus, according to the government, the section 7252(a) jurisdictional predicate of a Board "decision" was lacking in Mr. Andre's case. In advancing this argument, the government relies on our decision in *Ledford v. West*, 136 F.3d 776 (Fed.Cir.1998).

In 1977, the veteran in *Ledford* was granted a 100% disability rating for his schizophrenia, based on individual unemployability. In 1981, the RO changed the rating from 100% disability to 100% schedular. This change, which had the effect of terminating Ledford's individual unemployability benefits, was made pursuant to VA Circular 21–80–7. The Circular provided that "[a] 100% schedular evaluation will be assigned if unemployability is directly attributable to a service-connected neuro-psychiatric condition." *Id.* at 777. In 1985, a VA examiner determined, based upon an examination of Ledford, that Ledford's schizophrenia was in partial remission. The RO therefore reduced Ledford's schedular rating to 70%. Ledford filed an NOD with the BVA in which he objected to the reduction. In 1990, after several remands for further factual development, the Board reinstated the 100% schedular rating and set April 19, 1990, as the effective date for the reinstatement. *Id.* Thereafter, in November of 1991, Ledford filed an NOD alleging that the 1990 effective date was improper because the RO had committed clear and unmistakable error in 1985 when it reduced his schedular rating. After the Board confirmed the 1990 effective date, Ledford appealed to the Veterans Court. *Id.* at 777–78.

Before the court, Ledford challenged for the first time the 1981 RO decision changing his 100% disability rating to a 100% schedular rating. Ledford argued that VA Circular 21–80–7 was invalid because it was neither published in the Federal Register nor subject to notice and comment under the Administrative Procedure Act, *see* 5 U.S.C. §§ 552(a)(1), 553 (1994) ("APA"). He also argued that the Circular was invalid because it violated his due process rights under the United States Constitution. In making this argument, Ledford asserted that the Circular was inconsistent with a VA regulation generally prescribing that a 100% individual unemployability rating can be reduced only upon proof of employability by clear and convincing evidence, an evidentiary standard that Ledford asserted had not been met in his case. *Ledford,* 136 F.3d at 778. The Veterans Court characterized Ledford's challenge to the 1981 rating decision as a CUE claim and concluded that, because the claim had not been raised before the Board, it lacked jurisdiction to adjudicate it. *Id.* The court therefore dismissed that portion of Ledford's appeal. *Id.*

We affirmed the decision of the Veterans Court. Noting that section 7252(a) grants the Veterans Court the "power to affirm, modify, or reverse a decision of the Board or to remand the matter as appropriate," we concluded that "the court's jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed." *Ledford,* 136 F.3d at 779. Since the Board had never issued a decision concerning the RO's 1981 decision to change Ledford's rating from 100% disability to 100% schedular, there existed no predicate Board decision on which the court could rely to assert jurisdiction. Instead, the Board decision from which Ledford appealed involved the propriety of the Board's 1990 effective date for his reinstat-

ed benefits, which was legally and logically distinct from the RO's 1981 decision to modify his underlying disability rating. Accordingly, "Ledford had to have presented an NOD specifically challenging the 1981 determination in order to vest jurisdiction in the [Veterans Court] over that determination. While his legal reasoning supporting such a challenge need not appear in the NOD, ... an NOD must have indicated disagreement with a specific determination." *Id.* at 780. Absent the prerequisite of a Board decision, we held that section 7252(a) precluded the Veterans Court from asserting jurisdiction.

■ *Maggitt* and *Ledford* both teach that, in order for the Veterans Court to have jurisdiction under 38 U.S.C. § 7252(a), the court must have before it a "decision" of the BVA within the meaning of section 7252(a). In *Maggitt,* we concluded that the Veterans Court had before it a decision of the BVA on, and therefore had jurisdiction over, Maggitt's asthma, knee condition, and skin disorder claims. As a result, it was error for the court to hold that it lacked jurisdiction to consider new arguments in support of those claims. In *Ledford,* on the other hand, we concluded that the Veterans Court did not have before it a decision of the BVA on, and therefore did not have jurisdiction over, Ledford's APA and constitutional claims relating to the 1981 schedular change. As we explained in *Maggitt:* "Ledford never requested the reinstatement of his individual unemployability benefits from the Board; accordingly, the Veterans Court did not have jurisdiction over Ledford's claim, and thus lacked the authority to consider Ledford's constitutional and statutory challenges to the 1981 Agency decision that terminated those benefits." 202 F.3d at 1376.

We agree with the government that *Ledford* rather than *Maggitt* controls this case. The reason is that Mr. Andre, unlike the veteran in *Maggitt*, did not raise in the Veterans Court new arguments in support of claims that had been presented to and decided by the BVA. Rather, like the veteran in *Ledford*, he raised in the Veterans Court claims—as distinct from arguments—that had never been presented to or decided by the BVA. Because there was no Board decision on those claims, the Veterans Court lacked jurisdiction to adjudicate them.

Our decision turns on the fact that Mr. Andre's case involves CUE claims. In *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc), the Veterans Court addressed the scope of its jurisdictional mandate to review denials of CUE claims:

> The necessary jurisdictional 'hook' for this Court to act is a decision of the BVA on the specific issue of 'clear and unmistakable error.' For a claimant to raise such an issue for the first time before this Court and request us to act de novo is tantamount to requesting plenary review over decisions that are not within our jurisdiction.

In other words, each "specific" assertion of CUE constitutes a claim that must be the subject of a decision by the BVA before the Veterans Court can exercise jurisdiction over it.

As noted above, in 1997 Congress enacted the statutes that govern claims of CUE before the RO and the Board. The RO CUE statute is codified at 38 U.S.C. § 5109A. In *Pierce v. Principi*, 240 F.3d 1348 (Fed.Cir.2001), we stated that the legislative history of section 5109A reveals Congress's awareness and approval of the decision in *Russell* and we pointed out that the House and Senate Reports "discuss

*Russell* as setting forth the current state of the law which was to be codified by [section] 5109A." 240 F.3d at 1353.[3]

Unlike a claim for benefits, a CUE claim subsumes a specific allegation of error. That is, both in name and in logic, a CUE claim is not a generalized assertion of entitlement to benefits. Rather, it is an assertion that that the RO committed a particular clear and unmistakable error.

> The party bringing a CUE challenge to a final RO decision bears the burden of proving that the decision was based on a clear and unmistakable error. This burden is not satisfied by the mere assertion that the decision contained CUE; instead, the party must describe the alleged error "with some degree of specificity" and must provide persuasive reasons "as to why the result would have been manifestly different but for the alleged error."

*Pierce*, 240 F.3d at 1355 (quoting *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993)). Because a CUE claim involves an allegation of an error with "some degree of specificity," a veteran's assertion of a particular clear and unmistakable error by the RO constitutes a distinct claim. For that reason, we cannot accept the proposition that Mr. Andre's original CUE claim (attacking the RO's 1973 denial of benefits on the grounds of alleged factual errors and the VA's alleged breach of the duty to assist) effectively encompassed all potential allegations of clear and unmistakable error in the RO's decision.

The CUE claims that Mr. Andre raised before the Board encompassed only the clear and unmistakable errors specifically alleged therein. The CUE claims that Mr. Andre raised in the first instance before the Veterans Court—that the RO committed CUE by failing to apply 38 C.F.R.

---

**3.** *See* H.R.Rep. No. 105–52, at 2–3 (1997); S.Rep. No. 105–157, at 3 (1997).

§§ 3.303 and 3.304—thus did not constitute alternative arguments in support of claims previously asserted and decided by the Board, as was the case in *Maggitt*. Rather, they were entirely separate and distinct claims that the Board's decision had not addressed. In short, as far as the CUE claims that Mr. Andre raised for the first time before the Veterans Court were concerned, there existed no jurisdictional prerequisite of a "Board[ ] decision concerning the matter being appealed." *Ledford*, 136 F.3d at 779.

Finally, an important consideration supports our conclusion. Section 7252(b) provides that "[t]he extent of the [Veterans Court's] review shall be limited to the scope provided in section 7261 of this title." We have recognized that 38 U.S.C. § 7261(c), which provides that "[i]n no event shall findings of fact made by the Secretary or the Board ... be subject to trial de novo by the Court," prohibits the Veterans Court from making factual findings in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed.Cir.2000) ("The statutory provisions are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding."). To the extent that a CUE claim raised for the first time before the Veterans Court turned on underlying factual allegations, consideration of the claim by the Veterans Court could cause the court to run afoul of the prohibition in section 7261(c) against its engaging in initial fact finding.[4] In short, the result urged by Mr. Andre in this case would render meaningless both the statutory requirement of a Board "decision" to invoke the Veteran Court's jurisdiction and the

proscription against the Veterans Court making initial findings of fact on appeal.

Before leaving this issue, we should note that although the Veterans Court lacked jurisdiction to consider Mr. Andre's CUE claims relating to 38 C.F.R. §§ 3.303 and 3.304, Mr. Andre is not precluded from pursuing those claims. Pursuant to 38 U.S.C. § 5109A(d), a "request for revision of a decision of the Secretary based on clear and unmistakable error may be made at any time after that decision is made." A claimant such as Mr. Andre therefore may present a novel allegation that the RO committed CUE "at any time," irrespective of whether the Veterans Court has jurisdiction to consider the newly-raised allegation in the first instance. During oral argument, government counsel agreed that this option was available to Mr. Andre at the RO.

B. *Whether the Veterans Court erred in concluding that Mr. Andre waived the CUE claims that he had presented to the Board.*

■ Mr. Andre argues that the Veterans Court erred in concluding that he waived the CUE claims that he had presented to the BVA by failing to raise them in his principal brief. In ruling that Mr. Andre had abandoned these claims, the Veterans Court cited *Ford v. Gober*, 10 Vet.App. 531 (1997) (standing for the proposition that issues and claims not pursued on appeal are deemed abandoned). *Andre*, 14 Vet.App. at 9. *See Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed.Cir.1990) ("an issue not raised by

---

4. For example, if a veteran argued for the first time on appeal that an RO decision denying service connection for a particular condition was clear and unmistakable error because the decision was based upon a clear misreading of specified medical records, it

would be necessary for the Veterans Court to engage in fact finding as to the records and as to whether any error found was outcome-determinative. *See Bustos v. West*, 179 F.3d 1378, 1380–81 (Fed.Cir.1999).

an appellant in its opening brief .... is waived.").

Mr. Andre contends that the Veterans Court misinterpreted 38 U.S.C. § 7252(a), its jurisdictional statute, and 38 U.S.C. § 7266(a), its notice of appeal statute, when it held that he had abandoned the CUE claims that had been decided by the Board. Mr. Andre asserts that neither the CUE regulation, 38 C.F.R. § 3.105(a), nor the CUE statute, 38 U.S.C. § 5109A, "require[s] a specific or mandatory" pleading requirement. From this starting point, he argues that, because he timely appealed the Board's decision, the Veterans Court was obligated to consider all of the issues embraced by his notice of appeal, even if they were not mentioned in his briefing.

Mr. Andre has not asserted a claim within our jurisdiction. As noted above, our ability to review a decision of the Veterans Court is limited by 38 U.S.C. § 7292(a), which provides for our review of a "decision" of the Veterans Court "with respect to the validity of any statute or regulation ... or any interpretation thereof ... that was relied on by the Court in making the decision." We stated the parameters of our jurisdiction in *Forshey v. Principi*, 284 F.3d 1335, 1351 (Fed.Cir. 2002) (en banc):

> [U]nder subsection (a) [of section 7292] we have jurisdiction to review a decision of the Court of Appeals for Veterans Claims if that review invokes: (1) issues concerning the validity of statutes or regulations on which the decision of the Court of Appeals for Veterans Claims depended; (2) issues of interpretation if the Court of Appeals for Veterans Claims elaborated the meaning of a statute or regulation and the decision depended on that interpretation; and (3) issues of validity or interpretation raised before the Court of Appeals for Veterans Claims but not decided, if the deci-

sion would have been altered by adopting the position that was urged.

Mr. Andre's appeal does not fit within any of the three categories that *Forshey* announced as defining our jurisdiction. Category (1) is inapplicable because Mr. Andre's appeal does not present any issue involving the validity of a statute or regulation. Neither is category (2) applicable. The reason is that the Veterans Court did not cite to, let alone elaborate, the meaning of its jurisdictional statute or its notice of appeal statute. The court simply applied the jurisprudential rule that "an issue not raised by an appellant in its opening brief ... is waived." *Becton Dickinson*, 922 F.2d at 800. Nor does *Ford*, the case cited by the Veterans Court, cite to or elaborate the meaning of either section 7252(a) or section 7266(a). *See Forshey*, 284 F.3d at 1353 (Veterans Court may elaborate the meaning of a statute by citing to a case that contains an interpretation of the statute). Finally, category (3) does not apply because we are not confronted with an issue of validity or interpretation that was raised before the Veterans Court but not decided. As already discussed, all that transpired in the Veterans Court was Mr. Andre not briefing the CUE claims that had been decided by the BVA and the court then applying the abandonment rule.

CONCLUSION

The Veterans Court held that it lacked jurisdiction to adjudicate the CUE claims that Mr. Andre raised for the first time on appeal. Accordingly, it dismissed his appeal as to those claims. At the same time, the court held that Mr. Andre had abandoned the CUE claims that were decided by the BVA. For the reasons set forth above, we have concluded that the court's jurisdictional ruling was correct and that we lack jurisdiction to consider Mr. An-

dre's challenge to the abandonment ruling. The decision of the Veterans Court is therefore

*AFFIRMED.*